My next case is Ruth Etzel v. EPA and MSPB, 2022, 2050, and 2051. We are ready when you are, Counsel. Is it Dinerstein?  Dinerstein. Mm-hmm. So, good morning, Your Honors. My name is Paula Dinerstein. I'm with Public Employees for Environmental Responsibility, or PEER for short, and we represent the petitioner in this case, Dr. Ruth Etzel. At counsel table with me is my co-counsel, Peter Jenkins, and Dr. Etzel herself is here in the courtroom. We're here today because the MSPB judge found that there were no protected disclosures in this case that were a contributing factor to any adverse action against Dr. Etzel. And as a result, the EPA was not required to meet its burden of proof of clear and convincing evidence that it did not take the actions that it did against Dr. Etzel because of her Dr. Etzel is a pediatrician and epidemiologist, environmental epidemiologist, with a distinguished 30-year career in the United States Public Health Service, in the United Nations World Health Organization. Yes, but, well, we know her biography. The question is, were her disclosures evidence of gross mismanagement or danger to public health, or just reflective of a difference of opinion on policy and the speed of taking action against lead pollution? Yes, that's correct. First point on that is that, yes, we claim that her disclosures were clearly under this court's precedence of a substantial and specific danger to public health on the television presentation she appeared on in 2018. And whether or not it was a policy disagreement doesn't stop it from being a protected disclosure. Well, what's the specific disclosure that she made in the CNN or CBS appearances? Because, unfortunately, we don't have the transcript of what she said. Yes, we do have, in the appendix, there is an exhibit which is basically a transcript of what she said on her CBS appearance, which she also testified at the hearing that that was what she said. What she said... Okay, but let me ask my question. My question is, I see the description of what she said. It sounds very general. It's not a specific thing. You're not taking this particular action to prevent lead exposure to children. It's a general complaint. And if I understand the case as a general complaint isn't sufficient, so why is this sufficiently specific in your view? In the two years leading up to this disclosure, Dr. Edsel had worked on a federal lead strategy that was going to take very specific actions to reduce... But the question is not what she worked on. The question is what she said. And what she said on the television program is that that strategy that she had been working on had been abandoned by EPA, that she did not believe that EPA was going to take any action to actually reduce lead... Where is the statement that the specific strategy had been abandoned and that would cause injury to children? It's in the appendix. If you would look, I believe it's on page 1607 and 1608. 1607? 1607 and 1608 in the appendix. And the quote here is that she told the interviewer that the national strategy to remove lead from children's environment was, quote, stalled. With one official brought in by the new administration telling her that anything involving new regulation wouldn't fly. And then there's a quote from her saying, my sense is that the government has absolutely no intention of taking any action towards seriously changing lead in children's environments. Okay, but that's not a reference to a specific strategy. There's no description of any specific strategy there. She referred to the strategy that she had been working on. It's not necessary for a specific and substantial threat to public health and safety for her to lay out all the details of the disclosure. That's obviously correct. She doesn't have to lay out all of the details, but she has to be sufficiently specific so you know exactly what it is that she's saying is not happening and that children are being injured as a result of it. Right. What she was saying is that the strategy that she had been working on, which was intended to reduce lead from all sources in children's environment, had been stalled and she believed was likely to be abandoned or so watered down that it would be ineffective. Okay, but she doesn't say what the strategy is. Well, the strategy is to reduce lead in children's environments. What she says is that my sense is that the government has no intention of taking any action towards seriously reducing lead in children's environments. That was what the strategy was supposed to do. So if you compare this, for instance, to the disclosure that was made by the chief of police chambers in this court's decision, which is the leading decision on what is a substantial and specific danger to public health or safety in chambers versus Department of Interior, what she disclosed was very simple disclosure. She said traffic accidents on the Baltimore-Washington Parkway have increased because of the reduced police presence there. She didn't say how much they had increased. She didn't say why she believed that the police presence or reduced police presence was the cause. But she said it went from four officers to two officers and we can already see an increase in accidents. Right. It may be simple, but that sounds specific in a way that the things you've pointed us to do not seem specific. So she said there was a reduction in the number of officers, correct, and that it led to an increase in accidents. She didn't say how many more accidents there were, why she thought it was an increase, but this court said that any increase in traffic accidents was a serious and substantial danger to public safety. Let's assume for the moment that I would agree with that part of the distinction. How about the specific complaint about the reduction by 50% of the number of officers that were on the parkway? Where's anything like that kind of specificity in what your client said here? All you've pointed us to is she's generally complaining about the timing with which this report or new policy is going to be issued. So one of the errors that the administrative judge made in his decision was that he minimized the substantiality of her disclosure by saying it was only about the timing, it was only about his allay. That wasn't her disclosure. Her disclosure was that there wasn't going to... She doesn't tell us what the national strategy is so that one could see whether the failure to implement it would be a harm to children. She just says a national strategy, stall. She doesn't say what the strategy is or how it would prevent the harm that she's talking about. I think that in looking at the disclosure itself, you have to look at who made it. Just as this court looked at that in the Chambers case, that she was an expert in public safety. She knew the areas under her jurisdiction and therefore she could say that this increase in traffic accidents was caused by the reducing police presence because of her expertise. Dr. Edsel went on television as a 30-year renowned expert in the world on children's health and told the parents of the United States that EPA had dropped the ball, that it had a strategy in the works that was intended to reduce children's lead exposure and now it wasn't going to do it. Looking at who she was and who she was speaking to and what she knew, which goes to the reasonableness of her belief, what she knew because of her expertise, it was a protected disclosure. It may not have been exactly the same as Chief Chambers with a four to two, but nevertheless it is well known that lead exposure is a serious threat to children's health all over this country. What does the record show about what the national strategy would have done? That was not something that she specifically addressed in her television appearances. It was certainly something she knew. What does the record show about what it was? What it was? I'm not asking now about what she said in the television, I'm just asking what the national strategy was. How did it work? What the national lead strategy was before it was watered down after they put Dr. Edsel on administrative leave, was it had several goals. The first goal was to reduce children's lead exposure. The others had to do with communication and helping children in communities that were especially affected by lead and so on. As far as reducing children's lead exposure, we'd look at the exposure from different sources, whether it was in the air from aviation fuel, whether it was from food, from water, such as lead. What did it do to remedy lead exposure? What it did is it looked at all the existing government programs that were addressing these things, and the regulations that, for instance, might limit lead in water or limit the use of lead paint, that was one that had already occurred, or limit other ways that children get exposed to lead. It had specific programs that were going to go forward in order to reduce exposure from all these different sources of lead, both programs, grants, new regulations, everything sort of in the government's playbook. That's why it took so long to work up this strategy. They had been working on it for two years by the time she went on television with 17 different federal agencies and offices to have a very comprehensive approach to all the ways that children are being exposed to lead and to address them. What Dr. Edsel was told in early 2018 by an official in the new Trump administration, EPA Administrator's Office, was that the administration had no intention of having any enforceable measures in the strategy, and instead they just wanted to repackage things that were already being done. I think you're asking us to decide de novo whether her statements were substantial and specific enough. Have we ever said, the Federal Circuit, have we ever said that that's a de novo review matter? Well, I think it's probably a mixed question of fact and law as to whether her disclosures were substantial and specific under this court's precedent. We think they are. Can you point to any factual errors in what the board said about how substantial or specific they were? Yes. There's a couple things. One, the factual error that we've pretty much already discussed, which is that the court said that the disclosure was just about a delay. It was just about a matter of timing. It wasn't. It was about there not being a lead strategy at all or it being so watered down that it would be ineffective. That's a factual error. There are also legal errors. One of the legal errors was that the judge said that the danger should be quantifiable. That's clearly not the case law in this circuit. In the Chambers case, as we've discussed already, she did not quantify how many more accidents there were or would be. Another error that the judge made was that he didn't recognize her expertise, as we've already discussed to some extent, that in the Chambers case the reasonableness of her belief was based on her expertise that this court accepted as somebody who would know why traffic accidents increased. And likewise, Dr. Edsel has extreme expertise in children's health. Counsel, you're well into your rebuttal time. I assume you want to save it? Yes. I appreciate you telling me that. Thank you. Mr. Berg. Good morning, Your Honor, and may it please the court. This morning, focusing on the one purported disclosure that Appellant's counsel focused on only, there are other issues in the case, so I'll limit my argument only to the one we discussed with Positioner's counsel. The primary focus here in the thin record that we have of the disclosure at issue, as reported by the Board at Appendix 18, focuses on a policy disagreement, that being based on substantial evidence, the finding of the Administrative Judge, that the Petitioner... Something more than a policy disagreement. If she described the national strategy in specific terms and said it would reduce lead exposure by doing X, Y, and Z and they're not issuing it, would that have been a sufficient disclosure? Your Honor, that may have been a closer case. However, as I believe, Judge Dyke, you referenced in the opening argument, in this case there is no evidence in the disclosure itself or otherwise in the record as to specific actions that this Petitioner, this employee, had proposed and had been rejected by the agency and the consequences specifically then flowing from the failure of the agency, allegedly or purportedly to put those regulations or specific parameters in the lead strategy. As Your Honor notes, the disclosures in themselves in October 2018 have no detail as to what the lead strategy was in and of itself to start with, let alone any purported lapses in the substance of that strategy. There is a general theme in this case, continued throughout argument today by Petitioner's Counsel, that overstates what was actually in the disclosures themselves. The disclosures, as I believe the Court is aware, are the record of them, again, being thin and related Appendix 18 primarily by the Board and undisputed by the Petitioner in the case as to the accuracy of that statement of the disclosures. And that really goes to the standard of review that we have here. You said on 16-08 that national strategy to remove lead from children's environment stalled and new regulations wouldn't fly. And I guess it's a close question as to whether that's specific enough. She's making clear it's lead in the environment which could harm children. She just doesn't say what the strategy is. And is the failure to be more specific sufficient to make it not a protected disclosure? I don't know. It seems to me difficult, a close question. Your Honor, respectfully, I disagree with it being a close question in this case. There are marked distinctions between the specificity this Court has found to be sufficient in cases such as Chambers 3, which I believe Judge Dyke was the author of, and what we have in this case. And the administrative judge, I believe, on Appendix 27 actually does a kind of side-by-side comparison of what was at issue in Chambers 3 versus what we have here. And as the Court teased out with Petitioner's counsel, the reduction in officers on the specific Baltimore-Washington Parkway from four officers to two officers, a measured, measurable, quantifiable increase in traffic accidents occurring on that particular parkway. Those particulars... It doesn't have to be quantifiable, does it? Your Honor, it doesn't have to be quantifiable necessarily, but it being quantifiable goes to this Court's ability to assess the likelihood or the magnitude of the harm, which in Chambers is one of the factors that this Court considers as to whether a disclosing employee or applicant has a reasonable belief that what they have disclosed evidences a substantial and specific danger to public health or safety. So what if Dr. Edsel had just added a sentence identifying one specific elementary school here in the district and said, you know, children there are going to suffer because of the delay, something like that. Would that have been enough to push this over the edge? Your Honor, again, that may have been a closer case. However, we don't have that level of specificity in the record. I think what makes this challenging, at least for me, is there's no dispute, I guess, at this point that lead poisoning is a problem. And we know what harm, sadly, it leads to. So doesn't that arguably at least reduce the requirement of specificity when there's an unchallenged sort of background scientific fact? And wouldn't she reasonably think that her listeners would know that she's talking about all the terrible things that follow from lead poisoning if we don't, you know, take care of it? Your Honor, I believe you're discussing what goes to substantiality of the harm, which the government, like the administrative judge, doesn't question the perils of lead exposure to children. And this is on Appendix 29. But however, the lack of specificity in the case, specificity regarding what the EPA had failed to do to, and that was insinuated to be exacerbating lead poisoning in children, is lacking. And this is explained at Appendix 30 of the Board's opinion, where the administrative judge says that Dr. Edsel, consistent with the substantial evidence in the record, which is the standard here, made no specific allegations on October 15 and 16, 2018, about EPA's policies or actions. There being no clear nexus to what the government had done or had failed to do or not timely done, and an alleged increase in or continuing of poisoning of children by lead exposure. Nor did her disclosures reveal, the administrative judge says, a specific impending harm resulting because of any delay in EPA issuing the federal lead strategy. To the extent that Petitioner's Counsel today talks about the disclosure being more focused on the content of the strategy, the teeth of the strategy, versus the timeliness of the strategy, the record simply doesn't bear out that the focus here was on the teeth of the strategy or the rigor of the strategy, but rather it is focused on the timing and a apparent belief, unreasonable as it was, that the petitioner thought the strategy should have been released before it was. And this really is borne out in the Board's opinion at Appendix 28 and 29, where, as it relates to this disclosure, the focus is on the fact that there had been a long time running getting the policy into shape to be able to promulgate. There were 17 member agencies and offices involved in coming together and coordinating this effort to issue a broad strategy on reducing or abating lead exposure in children's environments. This was, as Dr. Edsel understood, a protracted process with many stakeholders involved. So that belief in and of itself certainly lacks any reasonable basis that, for some reason, the EPA had failed to timely issue the policy. Again, given the lack of specificity in agency action or policy, we are left with an unprotected policy decision. The statute makes clear at 2302A2D that these types of policy disagreements are not protected disclosures that can lead to whistleblower reprisal recovery. You've said several times that our standard of review on the specificity is for, I think you've said, substantial evidence. Where have we said that, that that is our standard of review? Your Honor, I'm not aware of a particular instance where the court has said that the review of that is for substantial evidence. However, in the Chamber's decision, for example, the review of whether police chief chambers had made a sufficiently substantial and specific disclosure of public health or danger, public health or safety, went to the factual basis and the factual underpinnings of what the police chief had disclosed to the Washington Post reporter in that case. Here, there really is no dispute as to the legal principles that the administrative judge was applying. The dispute on the petitioner's side as to how the administrative judge applied them to the facts that we have in the case. But you would say on the standard of review it's at least implicit in our Chamber's decision? Correct. And the substantial evidence for the administrative judge is... Where in Chambers did we say that? I'm sorry, Your Honor? Where in Chambers did we say that? When the court in Chambers goes through the... First of all, the court in Chambers, as Your Honor is aware, at 1376 goes through the legal standard itself and then applies that standard to the facts of the disclosure made by the police chief in the case. And this is at 1377 and 1378. So I guess my question is where do we say what the standard of review is? In speaking with Judge Stark, Your Honor, I think I had agreed that it's implicit in the decision, not necessarily explicit in the decision. And again, in this case, there is no legal error contended, at least not meaningfully, that the issue comes down to how the administrative judge actually applied to the facts of this case the standards that have been articulated in cases such as Chambers. I want you to look at it the other way. The question of whether a particular disclosure is sufficiently specific is a legal issue. It could be one or the other. It's not on its face apparent, but it's substantial evidence. Well, Your Honor, to the extent there is a... Again, to the extent that the court finds that there is a legal component to that question, which they're like, there is. As Petitioner's Counsel conceded, it's at most a mixed question in that we're discussing application of law to facts. And here, there is no dispute about the legal principle applied, but rather how that principle was applied to the facts in this case. And substantial evidence as to the factual findings that the administrative judge found and applied the law to, that substantial evidence exists in the record as elucidated in the opinion at Appendix 28 and 29 where the administrative judge chronicles all of the statements in testimony, for example, by Dr. Etzel as to the failure to timely implement the strategy on reducing lead exposure in children's environments. The standard or the exception is set forth in the committee report, if my recollection is correct. Is that right? There is a committee report that has been often quoted by this court, a Senate report. Where is the Senate report quoted in here? It's quoted in Chambers... I'm not sure if it's in Chambers 3 or Chambers 2. However, the Senate report... Is it in your brief? We quoted it in our brief, yes. Where? Court's indulgence. I don't see it cited in your table. The Senate report, Your Honor, just to be clear for the record, is on page 44 of our brief. 44? Yes, 44 of our brief. It's also in the administrative judge's opinion quoted as well. There they actually have a full quote of the primary component of the report, the focus component of the report. As I read that Senate report, it says, doing enough to protect the environment. This is much more specific than that. It's saying it's not doing enough to prevent lead exposure. So it's not exactly within the language of the Senate report. Your Honor, we haven't hung our entire case on the statement in the Senate report as to that statement surely is general and there may be... There undoubtedly is more specificity in what Dr. Retzel, based on the thin record we had, said during the news in October 2018. However, again, as the administrative judge found, based on substantial evidence in the record, there is simply a lack of specificity around EPA's actions or policies. As Judge Dyke discerned, there is absolutely nothing about the strategy itself in those disclosures, nor is there any disclosure revealing a specific impending harm that would result from the alleged inaction or dilatory action by the agency that is at issue in the disclosures as thin as they are. And if there are no further questions from the Court, I can conclude. Thank you, Counsel. Thank you. Ms. Stein has two minutes for rebuttal. So, first of all, going back to the disclosure on the television stations, it is no less specific because the disclosure was about a harm to potentially millions of children. The fact that she didn't name a particular school that it was happening at doesn't make it less specific, it just makes it more substantial. Also, the disclosure was not about the timing. It was about her fear, as she said, that EPA was not going to do anything about children's lead exposure. And she has a reasonable belief in that because she had been told by a senior EPA official that the agency had no intention of putting any enforceable measures in the strategy because she had been rebuffed repeatedly when she tried to push the strategy forward. The deadlines kept receding. And then she was put on administrative leave so that she could do nothing about the strategy or advocate for it being strong. So at that point in time, which is when you judge a reasonable belief, she had a reasonable belief that there would be no strategy and that is what she disclosed. It was not about a timing issue. I would like to briefly address the other disclosures that we believe that the administrative judge erroneously found were not protected or were not connected to a personal action. I don't think you can do that, counsel. This is an opportunity for reply and he didn't raise the other issues. So you're limited here to the disclosure you just were dealing with. Okay. I was just trying to address what I didn't have time for before but I will do what you say. Okay. The disclosure here meets, very easily meets, the three tests in the chamber's decision which were that the harm, the likelihood of the harm was not just likely but certain. The timing of the harm was not future or speculative but it was right now and ongoing. And the seriousness of the harm is undisputed and as the EPA found in the lead strategy that it eventually issued, exposure to lead can cause lifetime mental disabilities in children. Counsel, as you can see, your time has expired. Do you have a final statement? Yes, so we would ask the court to reverse and remand on its findings about the protected disclosures so that there can be a hearing, or if not a hearing, at least a decision back at the MSPB as to whether EPA meets its burden of proof on clear and convincing evidence that it did not take the actions it did based on whistleblower disclosures and we also request that the erroneous finding that the motion to compel discovery was untimely also be reversed so that that can be decided on the merits during the remand and that information, if any information comes from that, can be used in deciding the merits of the case on the remand. And we have all the other issues that were recited in the brief. Yes, thank you. Thank you. The case is submitted.